FILED'11 MAR 06 11:04 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JERRY LONGMORE,

        Plaintiff,

   v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

Civ. No. 10-75-AA
OPINION AND ORDER

---

Merrill Schneider
Attorney At Law
P.O. Box 16310
Portland, OR 97292
    Attorney for plaintiff

Dwight C. Holton
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

David J. Burdett
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff, Jerry Longmore, brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons set forth below, the Commissioner's decision is reversed and remanded for payment of benefits.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed a claim for Disability and Disability Insurance on October 17, 2003, and protectively filed a claim for Supplemental Security Income benefits on September 17, 2003, alleging disability as of May 15, 1997. Tr. 73, 150. Plaintiff's claim was initially denied on March 2, 2004, and upon reconsideration on July 22, 2004. Id. Thereafter, on March 6, 2007, plaintiff appeared in front of an Administrative Law Judge (ALJ). Id. The ALJ hearing was postponed, and a supplemental hearing was held on July 6, 2007. On August 1, 2007, the ALJ subsequently issued a partially favorable decision finding plaintiff disabled beginning January 3, 2006, but not disabled prior to that date. Tr. 86. Specifically, the ALJ found that prior to January 3, 2006, plaintiff could perform work existing in significant numbers in the regional and national economy, as a sweeper, kitchen helper, or hand packer. Tr. 84.

On October 15, 2009, the Appeals Council denied plaintiff's request for review, tr. 7-9, making the ALJ's decision the final agency decision. See 20 C.F.R. §§ 404.981, 422.210.

## STATEMENT OF THE FACTS

Plaintiff was 46 years old at the time of the hearing. Tr. 150. Plaintiff has at least a high school education. Tr. 83. Plaintiff has no history of past relevant work experience. Tr. 83, Finding 6. He last worked in 1997, and earned $3,661.84. Tr. 140.

Plaintiff alleges an inability to work due to a variety of physical ailments, including degenerative changes in his foot, back, and leg, tr. 264, 371, 386, 407, as well as a chronic and severe mental illness. Tr. 578.

On October 18, 2001, plaintiff was hospitalized at Oregon State Hospital (OSH) after it was determined he was unfit to proceed in his legal defense. Tr. 280. Plaintiff was treated for possible paranoid schizophrenia, schizoaffective disorder, and personality disorder. Tr. 272. On June 16, 2002, the court dismissed the underlying charges against plaintiff, with instructions to release plaintiff from OSH, but to "follow recommendations of [the] state hospital." Tr. 283. Plaintiff's treating psychiatrists elected to continue plaintiff's in-patient hospitalization for an additional five months for further psychiatric evaluation. Tr. 288.

In 2006, Dr. Cloak, a psychiatrist, noted that due to

3    - OPINION AND ORDER

plaintiff's presentation as disorganized and delusional, "it is hard to imagine any employment situation in which he could be consistently effective." Tr. 85, 587. Likewise, Dr. Godschaix, also a psychiatrist, diagnosed plaintiff with hallucinations so intense that "he does not believe they are psychotic" as well as anxiety, schizophrenia, delusions, catatonia, incoherence, and emotional withdrawal resulting in "extreme" limitations in social function, and marked limitations in activities of daily living and concentration, pace and persistence. Tr. 85, 598. Significantly, upon examination, Dr. Godschaix opined that plaintiff's psychiatric illness probably "began in 2000". Tr. 600.

## STANDARD OF REVIEW

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to

4   - OPINION AND ORDER


establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can

5   - OPINION AND ORDER

still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

I. The ALJ's Findings

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability. Tr. 76, Finding 2. This finding is not in dispute.

At step 2, the ALJ found plaintiff had the following severe impairments: psychotic disorder and probable paranoid schizophrenia. Tr. 76, Finding 3. This finding is in dispute.

At step 3, the ALJ found that these impairments did not meet or equal a listing prior to January 3, 2006. Tr. 77, Finding 4. This finding is not in dispute.

At step four, the ALJ assessed plaintiff's residual functional capacity (RFC) and found that, prior to January 3, 2006, plaintiff "had the residual capacity to perform a full range of work at all exertional levels" with one "nonexertional limitation[]: simple

6    - OPINION AND ORDER

repetitive tasks." Tr. 78, Finding 5. The ALJ based this conclusion on her finding that plaintiff lacked credibility, and by crediting the medical opinion of plaintiff's treating psychiatrist, Dr. Alexander R. Burt, M.D., and of two medical experts, Dr. David Rullman, M.D., and Dr. Robert McDevitt, M.D. Tr. 76, 85. This finding is in dispute. The ALJ further noted that plaintiff has no history of past relevant work and thus moved on to step five. Tr. 83, Finding 6. This finding is not in dispute.

At step five, the ALJ found that given plaintiff's age (a "younger individual"), his education level, work experience, and his RFC, in conjunction with the Medical-Vocational Guidelines, plaintiff was capable of making a successful adjustment to work that existed in significant numbers in the national economy, prior to January 3, 2006. Tr. 83-84, Findings 7-10. Thus, the ALJ concluded plaintiff was not disabled prior to January 3, 2006; however, after January 3, 2006, the ALJ concluded plaintiff was disabled due to the severity of his psychotic disorder and probable paranoid schizophrenia. Tr. 84, Findings 10-11. The finding that plaintiff was not disabled prior to January 3, 2006 is in dispute.

II. Plaintiff's Allegations of Error

The plaintiff alleges that the ALJ's opinion is not supported by substantial evidence in the record. Specifically, plaintiff challenges the ALJ's decision on four grounds. First, plaintiff argues that the ALJ's reasoning for dismissing plaintiff's physical

7   - OPINION AND ORDER

complaints are not supported by substantial evidence. Second, plaintiff argues that the ALJ's reasons for discrediting plaintiff's testimony regarding his ailments are insufficient as a matter of law. Third, plaintiff alleges the ALJ erred in his evaluation of plaintiff's RFC by improperly dismissing the opinions of plaintiff's treatment providers, Dr. Norvin Cooley, Dr. John Stevens, and Dr. Susan Godschalx, and by failing to consider new evidence supporting a disability onset date prior to December 31, 2000. Finally, plaintiff contends that the hypothetical relied upon by the Vocational Expert and consequently the ALJ, failed to reflect all of plaintiff's limitations. Because I find the ALJ improperly discredited plaintiff's testimony regarding his ailments, a reversible error, I do not address plaintiff's other challenges to the ALJ's decision.

In order to find a claimant's testimony regarding severity of his impairments unreliable, the ALJ must make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)). An ALJ must perform two stages of analysis in deciding whether to accept a claimant's subjective symptoms testimony. Id. First, the claimant "must produce objective medical evidence of an underlying impairment" or "impairments that could reasonably be

8     - OPINION AND ORDER

expected to produce some degree of symptom." Id. (citing Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996)). Second, if the first threshold is met, and there is no "affirmative evidence of malingering," the ALJ must offer "clear and convincing reasons" to reject the claimant's testimony. Id. Moreover, if the ALJ's finding is supported by substantial evidence, "the court may not engage in second-guessing." Id. (citing Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citations omitted)).

The ALJ failed to support her finding of malingering with substantial evidence from the record.

> In determining the credibility of [a claimant's] statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

SSR 96-7p, 1996 WL 374186, *1.

Once the adjudicator has assessed all of the relevant evidence, she "must then...draw appropriate inferences and conclusions about the credibility of the [claimant's] symptoms. Id. at *5. Although a finding of suggested malingering is proper for consideration, the ALJ "must consider the entire case record" in determining the claimant's credibility. Show v. Astrue, 272 F.App'x 647, 652-53 (9th Cir. 2008); SSR 96-7p.

The ALJ failed to adequately address the inconsistencies in

9    - OPINION AND ORDER

the record. She lists several reasons for discrediting claimant's subjective symptoms testimony. First, Dr. Burt observed plaintiff for over one year and recorded the following opinions: plaintiff manufactured symptoms only while staff could overhear him (Tr. 81, 85); plaintiff was allegedly heard telling another patient that he was faking his mental illness in order to stay in the hospital and avoid incarceration (Id.); and in 2002, Dr. Burt noted that plaintiff "does not currently suffer from a mental disease or defect." Tr. 81. Second, Dr. Dravis, another treating psychiatrist at OSH, also raised the possibility of malingering. Tr. 82. Third, the ALJ mentions that plaintiff refused treatment and evaluation while at OSH, and finally, the ALJ relied on plaintiff's ability to work with an attorney as evidence of lack of severity. Tr. 82.

The Commissioner argues that evidence of malingering is sufficient to compel an adverse credibility finding. I do not disagree with this contention; however, the ALJ has failed to adequately considered the entire case record in her credibility determination. Def.'s Br. 7. First, the ALJ focuses her analysis primarily on the thirteen month period plaintiff spent at OSH, consequently ignoring other pertinent information in the record. The administrative record is replete with medical records dating back to 1995 that suggests that plaintiff suffers from severe mental impairments with symptoms consistent with those allegedly "faked" by plaintiff in the psychiatric hospital. Dr. Ronald

10   - OPINION AND ORDER

Cafferky, M.D., attended to plaintiff on May 27, 1995, after plaintiff was admitted through the emergency room "on a two-day physician hold which states, 'danger to himself and others, and is afraid he will harm her.'" Tr. 46. At the time, plaintiff asserted he was "falsely" admitted into the hospital and that "there [was] nothing wrong with him." Id. Plaintiff further insisted that he had various powers including "intuition." Id. Dr. Cafferky personally interviewed plaintiff, noting his "speech was pressured. Content was grandiose and delusional." Id. Plaintiff denied any auditory or visual hallucinations. Id. Dr. Cafferky further opined that plaintiff's "insight, judgement, and impulse control [were] all severely impaired." Id. Plaintiff's medical records indicate that plaintiff suffers from "bipolar disorder, manic phase" and that plaintiff was prescribed lithium, a treatment for bipolar disorder, and haldol, an anti-psychotic medication. Id. The information provided by Dr. Cafferky, an examining physician, must be considered as part of the ALJ's credibility determination as it would weigh against the ALJ's finding of malingering.

Next, the ALJ discounted medical opinions after plaintiff's hospital confinement, in 2006, without supporting her decision with substantial evidence from the record. Drs. Cloak and Godschaix both opined that plaintiff displayed severe mental disabilities. Tr. 85. In fact, the ALJ acknowledges the opinions of Drs. Cloak and Godschaix, and even adopted such medical opinions beginning in

January 2006. However, while Dr. Godschaix answered "yes" to the question of whether plaintiff has been limited by [his mental disability] "since on or before 10/01/03" (tr. 85), the ALJ refuses to give any weight to Dr. Godschaix's medical opinion for the period prior to January 2006 because Dr. Burt disagreed with her opinion and "neither Dr. Cloak nor Dr. Godschaix appeared to be aware of the plaintiff's problems with malingering prior to their evaluations." Tr. 85. This reasoning is insufficient.

A treating physician's opinion is controlling when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other evidence of record. 20 C.F.R. § 404.1527(d)(2). When the treating physician's opinion is uncontroverted, the ALJ must give "clear and convincing reasons" before rejecting the opinion. Lester, 81 F.3d at 830. When the treating physician's opinion is disputed, the ALJ must give "specific and legitimate reasons" before rejecting the opinion. Id. While it is true that Drs. Cloak and Godschaix were not present at OSH during plaintiff's confinement, whether they were aware of plaintiff's alleged malingering would not change their medical opinions regarding the onset of plaintiff's mental disability. Moreover, it is significant that Dr. Burt never actually treated plaintiff due to plaintiff's refusal to cooperate with hospital personnel. While Dr. Burt's assessment of plaintiff relies primarily on observations over the course of thirteen

12   - OPINION AND ORDER

months, Drs. Cloak and Godschaix have both personally examined and interacted with plaintiff. Moreover, the fact that the ALJ relies heavily on both doctors' medical opinions beginning in 2006, makes the ALJ's complete disregard for their medical opinions prior to January 3, 2006, unreliable and unfounded.

Likewise, the ALJ discounted evidence indicating plaintiff's behavior, i.e., "presentation in a somewhat grandiose manner" and plaintiff's repeated denial of symptoms suggestive of a mental illness, was consistent with Dr. Cooley's mental health diagnosis of paranoid schizophrenia with grandiose and narcissistic traits. Tr. 282, 590-597. The ALJ notes that plaintiff was observed threatening other patients for food, making general paranoid statements, and occasionally behaving in an angry, irritable, and delusional manner. Tr. 80. Yet, the ALJ relies on Dr. Burt's observations, suggesting a behavior pattern "in which [plaintiff] would present with loud and somewhat grandiose and paranoid statements, but when confronted regarding them and approached within a day or two, he would present in a much more calm and rational manner." Tr. 81. The ALJ further discounted plaintiff's symptoms due to his refusal to undergo psychiatric evaluation or treatment. Tr. 82.

Although such a pattern may raise questions of malingering when viewed in isolation from plaintiff's medical records outside of OSH, the pattern does not appear inconsistent with plaintiff's

13 - OPINION AND ORDER

medical record as a whole. As discussed previously, plaintiff denied any mental illness as early as 1995, yet Dr. Cafferky recorded plaintiff's behavior as "grandiose and delusional." Tr. 46. In 2001, Dr. Cooley further questioned plaintiff's perception of reality after conducting a three hour interview with plaintiff, noting that he "clearly suffers from delusions which emanate from a schizophrenic thought process." Tr. 597. Further, Dr. Cooley was unable to complete plaintiff's psychological testing as a result of an "undue and dangerous meaning" plaintiff associated with the instruments presented to him. Tr. 596. Finally, plaintiff refused to allow Dr. Cooley access to his previous psychiatric records, which significantly, were consistent with the medical opinion expressed by Dr. Cooley absent such records. Id.

I also find that the ALJ inappropriately discounted the opinion of medical expert, Dr. Robert McDevitt. At plaintiff's hearing, Dr. McDevitt opined that aside from Dr. Burt's concern of malingering, the plaintiff's symptoms, including disorganized thinking, "are very difficult...for a person unless they have a lot of background and training to...fake." Tr. 681. Yet, the ALJ uses Dr. McDevitt's statement regarding his need for additional information to make a formal assessment, tr. 665, as reason to disregard his medical opinion relating to faked symptoms. Tr. 82. Additional weight is given to other psychiatric observations at OSH suggesting plaintiff's symptoms are "in part related to

14  - OPINION AND ORDER

intoxicants." Id. However, similar, if not identical, symptoms are observed by plaintiff's treating psychiatrists after January 3, 2006, yet the ALJ maintains that plaintiff's substance use is not a contributing factor material to the determination of disability for the time period beginning in 2006. Tr. 86. Although Dr. Burt asserted plaintiff was not suffering from a severe mental illness, he elected to hold plaintiff for an additional five months at an in-patient psychiatric hospital beyond the court ordered time period. Tr. 282. As such, I believe there is a disconnect between the ALJ's opinion regarding plaintiff's credibility and the entire body of evidence in the record.

The Commissioner further argues that plaintiff's "inconsistencies in reporting his income levels, a matter of some importance in determining his eligibility" for disability benefits seriously deters from plaintiff's credibility. Def.'s Br. 7. The Ninth Circuit acknowledged that the ALJ may properly consider a "finding of unreported earnings; however, it "hardly compels [an] adverse credibility finding." Show v. Astrue, 272 F.App'x 647, 652 (9th Cir. 2008). I find the reasoning in Show applicable to the Commissioner's argument, and thus find this argument unpersuasive.

Finally, the Commissioner argues that "the ALJ reviewed the medical evidence and found that it did not support the severity of the symptoms and limitations alleged by [plaintiff]." Tr. 7. I find this argument unpersuasive. The ALJ may not disregard subjective

15   - OPINION AND ORDER

complaints "solely because they are not substantiated by objective medical evidence." SSR 96-7p at *1. The Commissioner argues that such minimal objective findings in combination with other reasons, undermine plaintiff's credibility. Def.'s Br. 7. As I disagree with the ALJ's other reasons for discrediting plaintiff's subjective symptoms testimony, this argument is inapplicable.

The record contains a substantial amount of evidence inconsistent with the ALJ's finding of malingering. Relying on SSR 96-7p and the psychiatric review technique described in Section 12.00C of Appendix 1, 20 C.F.R. § 416.920(a)), a finding that the severity of plaintiff's psychotic disorder has met the requirements of section 12.03B of Appendix 1, was warranted, and a finding of disability prior to January 3, 2006 follows. Accordingly, I reverse and remand for payment of benefits.

## CONCLUSION

The Commissioner's decision is not based on substantial evidence in the record and is therefore reversed and remanded for payment of benefits.

IT IS SO ORDERED.

Dated this 3RD day of March 2011.

_____
Ann Aiken
United States District Judge

16 - OPINION AND ORDER